IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IRVIN M. BROWN,

      Petitioner,

  v.

WARDEN, NOBLE
CORRECTIONAL INSTITUTION,

      Respondent.

Case No. 2:14-cv-00813
Judge Graham
Magistrate Judge King

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition,* ECF 1, Respondent's *Return of Writ,* ECF 15, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Facts and Procedural History**

Petitioner was convicted in the Franklin County Court of Common Pleas on two counts of kidnapping and one count of felonious assault. The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> The prosecution presented the following at trial. In the fall of 2011, appellant met both Laurika Starks and Andrea Bostic. The women were neighbors who lived in adjoining units in an apartment complex. Appellant and Starks began to have a sexual relationship around November 2011. Starks ended the relationship in January 2012 because appellant had issues within himself and he was being argumentative. After the relationship ended with Starks, appellant began to have a sexual relationship with Bostic.
>
> On February 12, 2012, Bostic asked appellant to leave her apartment and ended the relationship saying that she did not want him in her house on account of her kids. Starks then let appellant into her apartment around noon on February 12, because they were

still friends and cordial with one another. Appellant ignored Starks for most of the day. From about noon until midnight he was focused on a laptop computer and talking to family. He also communicated with various people on Facebook during this time. Starks said it was clear he was upset.

We cannot tell from the evidentiary record before us whether or not Starks ever asked appellant to leave before he put a gun in her face. In her testimony at trial, Starks jumped right to the point where appellant is pointing a gun at her face without any explanation how the situation escalated. She stated she was terrified and could not leave because of the gun. Appellant initially pulled the gun around midnight. Starks then tried to talk him out of her apartment to get him to leave.

Starks said that appellant kept playing with the ammunition clip by taking it in and out of the gun. She testified she was able to take the clip when he put it down and hide it in the couch. Appellant apparently forced Starks to pray multiple times while pointing the gun at her, and asked her whether she loved Jesus and if she loved Tupac.

When Starks' 10–year–old daughter came partially down the stairs of the apartment around 2:00 or 2:30 a.m., on February 13, appellant decided to leave, but he took the gun and the clip with him. Starks locked the door and tried to act as if the incident never happened. Starks stated she did not think appellant would shoot her and she did not think that he would shoot Bostic so she was not worried when he finally left.

Starks testified she did not hear any arguing between appellant and Bostic through the walls of the adjoining apartment on the morning of February 13, but thought she could hear appellant arguing with himself through the walls on other occasions. Starks testified she next saw appellant at about 8:00 a.m. on February 13, when appellant was yelling on a cell phone outside.

Starks testified the topic of her being detained did not come up with the police during her initial questioning at the time of appellant's arrest, but she did affirm to police that Bostic was detained by appellant. Starks stated she just did not want to get involved. Starks only told the police her entire story about being detained with a gun the following week.

Bostic testified that she was the only one home in the early morning of February 13, 2012. When Bostic first opened the door

for appellant around 2:30 a.m., she stated he said "I just scared the-scared the hell out of your neighbor." (Tr. Vol. I, at 142.) When asked why, appellant responded "I just put the gun to her head." (Tr. Vol. I, at 143.) Bostic testified that appellant fired a warning shot, to see if anybody would come. Starks however never testified to hearing this warning shot which was supposed to have happened fairly soon after appellant arrived at Bostic's apartment after he just left Starks.

Bostic's testimony is clear that appellant put the gun to her chin, made her pray, repent, and state bible verses while he called her dumb bitch and other names. Bostic was shot in the ankle when she was sitting on the couch with her face covered by her hands. Appellant was standing a little distance away from her with the gun pointed at her when he shot her. Once Bostic was shot, she covered her legs with a blanket because she did not believe appellant was aware that she was injured. For two hours after Bostic was shot and covered with the blanket, appellant was torturing her, hitting her, and making her state bible verses.

When appellant discovered that Bostic had been shot, he said that he did not mean to shoot her, but continued to ramble and ask bible questions stating "This time you better answer this or else I'm gonna blow your damn head off." (Tr. Vol. I, at 166.) After appellant saw that Bostic was hurt, he let her go to the bathroom and then tried to put a towel around her ankle.

Bostic was able to get away at one point and went to her child's bedroom, intending to jump out the window. She saw her neighbor TJ going to work. TJ saw her and asked what was wrong. Ms. Bostic either said help me or he shot me. Appellant returned with the gun at that moment and banged on the door demanding to be let in.

When appellant saw her at the window, he asked her if she was going to jump. Bostic replied that she thought she saw her kids but it was the neighbor TJ. Apparently, at this point, appellant went to the window and said something to TJ after putting the gun down on the child's bed.

As appellant was having a conversation with TJ, Bostic hid the gun under some blankets on the bed and went downstairs and then outside. TJ let her go to his house and stated he would wait outside for appellant. Once Bostic locked TJ's front door behind her, she called her children's father, Frasier, who was already late in bringing the kids home to Bostic's apartment. Frasier ended up

3

> calling the police who arrived within a few minutes. At trial, Bostic denied stating to medical personnel that the shooting was an accident.
>
> Appellant sent Ms. Bostic letters after the incident. On February 17, 2012, appellant wrote that the devil took his mind that there were no drugs involved. He also wrote that he was sorry.
>
> On March 29, appellant asked Bostic to forgive him and marry him. He promised to get help. On March 30, 2012, appellant wrote that he did not mean to shoot Bostic and that he was wrong for his actions.
>
> As indicated earlier, appellant was indicted on two counts of kidnapping in violation of R.C. 2905.01 and one count of felonious assault in violation of R.C. 2903.11. On January 29, 2013, a three-day jury trial commenced in which appellant was convicted on all counts. Appellant timely filed a notice of appeal on February 5, 2013.

*State v. Brown*, No. 13AP-164, 2013 WL 6506708, at *1-3 (Ohio 10th App. Dist. Dec. 10, 2013). On direct appeal, Petitioner alleged that he had been denied a fair trial because of prosecutorial misconduct, that he had been denied the effective assistance of counsel, that the evidence was constitutionally insufficient to sustain his convictions, and that his convictions were against the manifest weight of the evidence. *See id.* On December 10, 2013, the appellate court affirmed the judgment of the trial court. *Id.* In his appeal to the Ohio Supreme Court, Petitioner presented only the prosecutorial misconduct claim. ECF 15-9, PageID# 265. On April 23, 2014, the Ohio Supreme Court declined jurisdiction to hear the appeal. *State v. Brown*, 138 Ohio St.3d 1471 (2014).

On July 11, 2014, Petitioner filed this action, asserting the same claims as had been presented in his first appeal to the state court of appeals. Respondent contends that the claims are procedurally defaulted or without merit.

4

**Procedural Default**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims must present those claims to the state courts before presenting them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c). This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  If the petitioner fails to fairly present his claims to the state courts, but still has an avenue open to him by which he may present his claims, then his petition for a writ of habeas corpus is subject to dismissal for failure to exhaust state court remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). If the petitioner has failed to exhaust his claims but his claims are now barred from presentation to the state courts, "there is a procedural default for purposes of federal habeas corpus. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim has been waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*.  Third, it must be determined whether the

state procedural rule is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the court determines that a state procedural rule was not satisfied, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise issues at trial and to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

In order to establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). However, such a claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. at 479). Specifically, "th[e] ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted," *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005), or, if the claim of ineffective assistance of counsel has been procedurally defaulted, the petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. at 450–51.

If, after considering all four factors of the *Maupin* test, a court concludes that a procedural default has occurred, the court may not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably

6

resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir.2013) (citing *Murray v. Carrier*, 477 U.S. at 495–96).

In his second claim, Petitioner alleges that he was denied the effective assistance of counsel. In his third and fourth claims, Petitioner alleges that the evidence was constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence. Although Petitioner raised these claims on direct appeal, he failed to present these claims to the Ohio Supreme Court. ECF 15-9, PageID# 265. Petitioner may now no longer do so, because these claims are now barred from further consideration by the state courts under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The Ohio Supreme Court was never given an opportunity to enforce the procedural rule at issue because of the nature of Petitioner's procedural default.

This Court concludes that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state courts' reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–51 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d

7

754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v. *Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Petitioner has failed to establish cause and prejudice for his procedural default of his second, third, and fourth claims for relief. Moreover, the record does not establish that this is an extraordinary case, reflecting that Petitioner is actually innocent of the charges on which he stands convicted, so as to justify a merits review of his procedurally defaulted claims. *See Murray v. Carrier*, 477 U.S. at 491. In order to establish a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). *See also Gulertekin v. Tinnelman–Cooper,* 340 F.3d 415, 427 (6th Cir. 2003). Petitioner has not done so here.

In short, Petitioner has waived this Court's consideration of the merits of his second, third, and fourth claims for relief.

8

Respondent argues that Petitioner has also procedurally defaulted his claim of prosecutorial misconduct because he failed to raise this issue at trial. Although the state appellate court noted that a failure to object at trial requires review for plain error only, *State v. Brown*, 2013 WL 6506708, at *3, that court then went on to address the merits of Petitioner's claim of prosecutorial misconduct. Although a state appellate court may alternatively dismiss a procedurally defaulted claim on the merits without forgiving the waiver or otherwise reviving the claim for purposes of habeas corpus review, *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989); *Bowling v. Parker,* 344 F.3d 487, 498 (6th Cir. 2003), it is not clear that the appellate court in this case actually enforced the procedural rule at issue, *i.e*., Petitioner's failure to raise the issue before the trial court, under the second part of the *Maupin* test. Instead, the appellate court appears to have addressed the merits of all of Petitioner's allegations of prosecutorial misconduct.

Respondent argues that the appellate court's brief reference to *State v. Noling*, 98 Ohio St.3d 44 (Ohio 2002), indicates that the state court engaged in only plain error review. *Return of Writ,* ECF 15, PageID# 100. This Court is not so persuaded. The appellate court's reference to *Noling* was made in connection with its statement that closing arguments must be reviewed in their entirety. *State v. Brown*, 2013 WL 6506708, at *4. The appellate court did not indicate that it was conducting a plain error review because Petitioner failed to raise the issue at trial. This Court will therefore address the merits of Petitioner's claim of prosecutorial misconduct.

**Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this Court's review of state court determinations. The United State Supreme Court recently emphasized that federal habeas courts must not "lightly conclude that a State's criminal justice system has

9

experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––– U.S. ––––, ––––, 134 S.Ct. 10, 16 (2013); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("The AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

Moreover, the factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under the AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an

10

> "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of establishing a right to federal habeas corpus relief under § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170 (2011). "In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)(A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree on the correctness of the state court's decision."). Moreover, federal habeas courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer,* 588 F.3d 328, 341 (6th Cir. 2009) (" '[O]ur focus on the "unreasonable application" test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'") (quoting *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Similarly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster,* 563 U.S. at --, 131 S.Ct.

11

at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399.

**Claim One**

In his first claim, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct. "The prosecutor's inflammatory remarks and misconduct invaded jury province and violated defendant's rights as guaranteed him by the 5th and 14th Amendments to the United States Constitution." *Petition*, ECF 1, PageID# 5. The state appellate court denied this claim as follows:

> The first assignment of error argues that the prosecuting attorney's remarks during closing arguments constituted prosecutorial misconduct which deprived appellant of a fair trial. Upon examination, the prosecuting attorney's closing remarks do not shift the burden of proof to the defendant and do not amount to prosecutorial misconduct. The comments focus on the lack of evidence supporting the defendant's theory of the case that the gun went off accidentally.
>
> "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). A prosecutor's conduct cannot be grounds for error unless such conduct deprived the defendant of a fair trial. *State v. Evans*, 63 Ohio St.3d 231, 240 (1992). Absent the deprivation of a fair trial, no constitutional error occurs. *Darden v. Wainwright*, 477 U.S. 168, 183 (1986). The Supreme Court of Ohio has cautioned that prosecutorial misconduct constitutes reversible error only in rare instances. *State v. Keenan*, 66 Ohio St.3d 402, 405 (1993). Additionally, a failure to object requires that we review any error under the stringent plain error standard. Crim.R. 52(B); *see Evans* at 240.
>
> We must review a closing argument in its entirety to determine whether prejudicial error exists. *State v. Noling*, 98 Ohio St.3d 44, 2002–Ohio–7044, ¶ 94. A prosecutor's statements are not be taken out of context and given their most damaging meaning. *Id.* Further, pursuant to the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each

of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64 (1995).

Prosecutors are given considerable latitude in closing argument. *State v. Dillon*, 10th Dist. No. 04AP–1211, 2005–Ohio–4124, ¶ 50. The prosecutor is entitled to comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Butler*, 10th Dist. No. 03AP–800, 2005–Ohio–579, ¶ 11.

Prosecutorial misconduct exists when the language used by the prosecutor "was manifestly intended or was of such character that the jury would *naturally and necessarily* take it to be a comment on the failure of the accused to testify." (Emphasis sic.) *State v. Webb,* 70 Ohio St.3d 325, 328 (1994). The Supreme Court has clearly identified that a prosecution's comments on the defense's failure to provide evidence to support a theory of a case does not necessarily shift the burden of proof or necessarily go to a defendant's refusal to testify:

> It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case. Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent. A prosecutor may jeopardize the integrity of a trial by commenting on a criminal defendant's decision not to testify. Nevertheless, the prosecutor is not precluded from challenging the weight of the evidence offered in support of an exculpatory theory presented by the defense. Neither must the state, in order to satisfy its own burden of proof, disprove every speculative set of possibly exculpatory circumstances a defendant can suggest, nor refrain from arguing the defendant's failure to provide evidence to support proffered theories of excuse or innocence.

(Citations omitted.) *State v. Collins*, 89 Ohio St.3d 524, 527 (2000). A prosecutor is permitted to highlight the lack of evidence supporting a defendant's theory of case.

Appellant argues that various statements made by the prosecution during closing arguments where comments on appellant's failure to testify or shifted the burden of proof onto appellant. "You're going

13

to hear absolutely no explanation of why he would continue to contact her and want to marry her, because there is none if he didn't do this." (Tr. Vol. II, at 139.) "You're not gonna hear how this accident could have happened if - why he had the gun in the first place. * * * And you're not going to hear an explanation for the trajectory of the path of the bullet." (Tr. Vol. II, at 140 .)

In the closing rebuttal, the prosecution made similar statements: "You heard no explanation for the trajectory of the bullet other than this tug-of-war which is pure conjecture and does not fit the evidence. And no explanation for how his firearm could be tested in twelve different ways * * * and not go off. No explanation." (Tr. Vol. II, at 216.)

These statements and similar ones made during the prosecution's closing argument addressed the lack of evidence to support appellant's theory of the case and are not comments on appellant's failure to testify. The prosecution is addressing the jury in a future tense referring to appellant's counsel's explanation of the evidence that would occur in appellant's closing argument or in the past tense during the prosecution's rebuttal. These statements do not amount to prosecutorial misconduct.

The following statement was also made in the closing rebuttal: "Where are these Facebook posts, these people he was talking to on the phone. Where are they? They are his family. What good is that gonna do? Are they gonna come in and testify against him? Does that make any sense?" (Tr. Vol. II, at 207.) This comment was objected to and sustained. However, the comment does not amount to misconduct.

Defense counsel, in closing argument, stated that there was no evidence to support Starks' claims that appellant was on Facebook and the phone all day becoming upset and rambling:

> Where is the evidence? Where is all this Facebook rambling stuff? Where's transcripts of all that, or printouts of all this Facebook rambling that Mr. Brown is supposedly doing all day long?
>
> Who are all these people he's talking on the phone to? Where's his phone records? Who's he on the phone talking to all day long doing all this rambling? We have no evidence, no evidence whatsoever to back up these women's claims or Laurika's claims that he's on Facebook

> all day and rambling and rambling. Where is all that crazy rambling on Facebook?
>
> We have no proof of that other than Laurika Stark's word.

(Tr. Vol. II, at 148.)

The prosecuting attorney was responding to defense counsel's argument that the State failed to offer some evidence, not that appellant failed to testify. The prosecution's statements about the State not producing Facebook posts or having appellant's family testify were neither manifestly intended to be a comment on the accused's failure to testify, nor would the jury naturally and necessarily take them to be.

It is improper for a prosecuting attorney to make arguments or remarks likely to inflame the passions of the jurors, if intended to lead them to convict for an improper reason. *Berger v. United States,* 295 U.S. 78, 88 (1935).

Appellant argues that these statements were likely to inflame the passions of the jurors: "So he has this history of erratic behavior * * *." "He's getting upset all about Facebook. Is that what we would do? Probably not. So keep this in mind when you're thinking about all of these people." (Tr. Vol. II, at 113–14.)

> You are talking about the kind of guy who writes those kind of letters, who rambles all the time, who talks to himself, argues with himself, and who gets so worked up over a Facebook post that he cries. There's nothing wrong with that, I'm just - with men crying, I'm just saying this is overly emotional. This is how he reacts. Remember, Laurika [Starks] said he has his issues, issues. His behavior became erratic so she had to get him to leave.

(Tr. Vol. II, at 143.)

These comments about appellant's behavior are not intended to inflame the passions of the jurors, but are comments on the evidence given by the two witnesses of, what the prosecution argues, was appellant's irrational behavior. The prosecutor may comment on what the evidence has shown and what are reasonable inferences from that evidence. *Butler* at ¶ 11. These are proper comments on the evidence properly before the jury and do not amount to prosecutorial misconduct.

15

> We find there was no prosecutorial misconduct during the closing arguments or in the closing rebuttal.

*State v. Brown,* 2013 WL 6506708, at *3-6.

The appropriate standard of review for claims of prosecutorial misconduct on a writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). For prosecutorial misconduct to rise to the level of a constitutional violation, the conduct of the prosecutor must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 643); *see also Darden*, 477 U.S. at 181. Thus, "Petitioner's burden on habeas review is quite a substantial one." *Byrd v. Collins,* 209 F.3d 486, 529 (6th Cir. 2000).

When analyzing a claim of prosecutorial misconduct, a federal court must first determine whether the challenged statements were improper. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). If improper, the court must then examine whether the statements were so flagrant as to constitute a denial of due process and warrant the grant of the writ of habeas corpus. Even if the prosecution's conduct was improper, or even "universally condemned," a federal court may reverse a state court conviction or sentence only if the statements were so flagrant as to render the entire trial fundamentally unfair. *See, e.g., Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006). A court makes that determination by considering the following four factors: (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant. *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005); *see also Bowling v. Parker*, 344

F.3d 487, 512–13 (6th Cir. 2003). Habeas relief will not be granted unless the conduct of the prosecutor "likely had a bearing on the outcome of the trial. . . ." *Byrd*, 209 F.3d at 530.

A prosecutor's "remarks must be examined within the context of the trial." *United States v. Young,* 470 U.S. 1, 12 (1985).  "As a general rule, the prosecution has 'wide latitude' during closing arguments to respond to the defendant's strategies, evidence and arguments." *Cox v. Curtin*, 698 F.Supp.2d 918, 945 (W.D. Mich. 2010)(citing *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009)); *Wilson v. Berguis*, No. 1:04-cv-771, 2008 WL 227848, at *7 (W.D Mich. Jan 25, 2008)("While a prosecutor cannot make statements calculated to incite the passions and prejudices of the jurors, she is granted wide latitude to state her position in closing arguments.")(citing *Broom v. Mitchell*, 441 F.3d at 412–13).  Comments made in response to a defendant's theory of the case do not ordinarily constitute prosecutorial misconduct.  *See Wheeler v. Simpson*, 779 F.3d 366, 377 (6th Cir. 2015).  "When defense counsel's remarks invite a response, the prosecutor may respond in order to 'right the scale.'" *Wilson v. Berguis*, 2008 WL 227848, at *7 (citing *Young,* 470 U.S. at 11-13)).  "Prosecutors can argue the record, highlight any inconsistencies or inadequacies of the defense, and forcefully assert reasonable inferences from the evidence."  *Cristini v. McKee*, 526 F.3d 888, 901 (6th Cir. 2008) *see also Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005); *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).  A prosecutor may fairly present arguments based on the evidence presented at trial. *See Skinner v. McLemore*, 551 F.Supp.2d 627, 649 (E.D. Mich. 2008)(citing *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz,* 773 F.2d 711, 717 (6th Cir. 1985); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill.1995)).

The state appellate court found that the prosecutor merely pointed out the lack of evidence supporting Petitioner's theory of defense, responded to Petitioner's argument regarding proof of guilt, and characterized evidence presented at trial; the state appellate court concluded that the prosecutor did not thereby engage in misconduct. These findings and conclusions of the state appellate court did not constitute an unreasonable determination of the facts in light of the evidence presented or unreasonably apply clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d). Under these circumstances, Petitioner has failed to establish that the prosecutor's remarks denied him a fair trial so as to warrant federal habeas corpus relief.

Claim one lacks merit.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report*

*and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                               *s/ Norah McCann King*
                                               Norah McCann King
                                               United States Magistrate Judge

September 8, 2015